SMITH v CHILDS

Docket No. 133984. Submitted November 10, 1992, at Grand Rapids.
Decided February 1, 1993, at 9:05 A.M.

Jeanine Smith brought an action in the Kent Circuit Court
against Francis Childs, Farm Bureau Life Insurance Company,
and Farm Bureau Marketing Corporation, seeking the proceeds
of a life insurance policy issued by Farm Bureau Life to
Smith's husband. The policy was purchased by the husband
through Childs, an employee of Farm Bureau Marketing. Fol-
lowing the husband's death in a motor vehicle accident, Farm
Bureau Life refused to pay the benefits, claiming that the
decedent had made a material misrepresentation on the appli-
cation. The plaintiff, the beneficiary of the policy, sought en-
forcement of the policy against Farm Bureau Life and damages
from Farm Bureau Marketing and Childs for Childs' negligence
in submitting an application he knew to be inaccurate. The day
before trial, Farm Bureau Life and the plaintiff entered into a
release and settlement agreement whereby the plaintiff agreed
to continue to pursue her claims against the remaining defen-
dants and to release Farm Bureau Life from all liability arising
out of the life insurance contract. In return, Farm Bureau Life
agreed that if the plaintiff recovered less than $20,000 from
Childs and Farm Bureau Marketing, it would pay the plaintiff
the difference between $20,000 and the actual recovery. If more
than $20,000 was recovered, Farm Bureau Life would pay the
plaintiff nothing. The action against Farm Bureau Marketing
was dismissed without prejudice. A jury found Childs to have

REFERENCES

Am Jur 2d, Champerty § 3; Compromise and Settlement §§ 25, 27;
Release §§ 14, 37.
Release of, or covenant not to sue, one primarily liable for tort, but
expressly reserving rights against one secondarily liable, as bar to
recovery against latter. 24 ALR4th 547.
Validity and effect of agreement with one cotortfeasor setting his
maximum liability and providing for reduction or extinguishment
thereof relative to recovery against nonagreeing cotortfeasor. 65
ALR3d 602.
Release of (or covenant not to sue) master or principal as affecting
liability of servant or agent for tort, or vice versa. 92 ALR2d 533.

been negligent and that the plaintiff's damages were $100,000. The award was reduced to $60,000 pursuant to the jury's finding that the decedent was forty percent comparatively negligent, and the court, Donald A. Johnston, J., entered judgment accordingly. Childs appealed, contending that the agreement between the plaintiff and Farm Bureau Life should be declared void as contrary to public policy.

The Court of Appeals *held:*

1. The settlement agreement was not contrary to public policy. The agreement is not void because of champerty. The defense of champerty does not exist in Michigan, except with regard to attorneys.

2. The release of Farm Bureau Life from liability did not release Childs as well. Enactment of MCL 600.2925d; MSA 27A.2925(4) abrogated the common-law rule that release of a principal discharged the liability of its agent. The release of Farm Bureau Life had no effect on Childs' liability.

3. The agreement did not unfairly prejudice any claim of contribution that Childs might have against Farm Bureau Life. The trial court correctly found that concern regarding Childs' right to contribution should not cause it to reject the settlement agreement. The requirement in MCL 600.2925d; MSA 27A.2925(4) that a release must be given in good faith, sufficiently protects any right to contribution from Farm Bureau Life that Childs may have.

Affirmed.

1. TORTS — RELEASE — SETTLEMENT AGREEMENTS — PUBLIC POLICY.

A settlement agreement between a plaintiff and one of several defendants may be declared void as contrary to public policy because it denies the remaining defendants a fair trial where: the agreement does not act as a release, so the agreeing defendant remains in the case; the agreement is structured in a way that it caps the agreeing defendant's potential liability and gives that defendant an incentive to assist the plaintiff's case against the other defendants; and the agreement is kept secret from the other parties and the trier of fact, causing all to misunderstand the agreeing defendant's motives.

2. ACTIONS — DEFENSES — CHAMPERTY.

The defense of champerty is not available in Michigan, except as specified by statute with regard to attorneys (MCL 600.919; MSA 27A.919).

3. TORTS — RELEASE — PRINCIPAL AND AGENT.

Enactment of the statute providing that if a principal obtains a

release, the release does not discharge any other tortfeasor, including the principal's agent, from liability unless the release says it does, abrogated the common-law rule that release of a principal discharged the liability of its agent (MCL 600.2925d[a]; MSA 27A.2925[4][a]).

*Gruel, Mills, Nims & Pylman* (by *J. Clarke Nims* and *Brion J. Brooks*), for the plaintiff.

*Cholette, Perkins & Buchanan* (by *Robert J. Riley*), for Francis Childs.

Before: MacKenzie, P.J., and Griffin and Connor, JJ.

Connor, J. Defendant Francis Childs appeals as of right the judgment entered against him pursuant to a jury's verdict. We affirm.

Plaintiff's now deceased husband purchased a life insurance policy from defendant Farm Bureau Life Insurance Company through defendant Childs, an employee of defendant Farm Bureau Marketing Corporation. On the application, the decedent falsely stated that he had not been convicted of three or more speeding offenses in the previous three years, when in fact he had been convicted of over a dozen.

Plaintiff's husband was killed in a motor vehicle accident. Farm Bureau Life refused to pay his life insurance benefits, claiming that the decedent had made a material misrepresentation on the application. Plaintiff brought this action seeking enforcement of the policy against Farm Bureau Life and damages against Farm Bureau Marketing and Childs for Childs' negligence in submitting an application he knew to be inaccurate. Plaintiff claimed that Childs was aware of the decedent's driving record, and negligently permitted the decedent to sign the life insurance application containing an inaccurate response.

On the eve of the trial, plaintiff and Farm Bureau Life entered into a release and settlement agreement. Plaintiff agreed to continue to pursue her claims against the remaining defendants to the full extent of the law, and to release Farm Bureau Life from all liability arising out of the life insurance contract. In exchange, Farm Bureau Life agreed to pay plaintiff up to $20,000, depending on how much plaintiff ultimately recovered from the remaining defendants. If plaintiff recovered $20,000 or more from Farm Bureau Marketing and Childs, Farm Bureau Life would pay plaintiff nothing. If plaintiff recovered less than $20,000 from Childs and Farm Bureau Marketing, Farm Bureau Life would pay plaintiff the difference between $20,000 and plaintiff's actual recovery.

Plaintiff's case against Childs went to trial.[1] A jury found that Childs had been negligent and that plaintiff's damages were $100,000. The jury determined that the decedent's comparative negligence accounted for forty percent of the total damages, and the award to plaintiff was reduced to $60,000.

At issue on appeal is the propriety and effect of the settlement agreement between plaintiff and Farm Bureau Life. Defendant Childs contends that the agreement was a *Mary Carter*[2] agreement, and should be declared void as contrary to public policy. We disagree.

The distinguishing characteristics of a *Mary Carter* agreement are that it (1) not act as a release, so the agreeing defendant remains in the case, (2) is structured in a way that it caps the agreeing defendant's potential liability and gives

---

[1] Farm Bureau Marketing was apparently never served with a complaint, and never appeared before the trial court. After the verdict against Childs, plaintiff had her claim against Farm Bureau Marketing dismissed without prejudice pursuant to MCR 2.504(A)(1)(a).

[2] *Booth v Mary Carter Paint Co,* 202 So 2d 8 (Fla App, 1967).

that defendant an incentive to assist the plaintiff's case against the other defendants, and (3) is kept secret from the other parties and the trier of fact, causing all to misunderstand the agreeing defendant's motives. See *Ward v Ochoa,* 284 So 2d 385, 387 (Fla, 1973). Courts have found that such agreements deny the nonagreeing defendants a fair trial. See *id.* at 388.

We conclude that this agreement was not a *Mary Carter* agreement. The agreement was not kept secret, and because it released Farm Bureau Life from liability, the insurance company played no part in the trial.

Moreover, the agreement did not cause any detrimental effect on Childs' trial. It did not result in any participant in the trial having misunderstood or hidden motives. And it did not foreclose Childs from demonstrating to the jury that a breach of contract by Farm Bureau Life, and not his negligence, was the cause of plaintiff's injury.[3]

Childs contends the agreement should be void as being champertous, because it required plaintiff to continue her litigation against Childs, and Farm Bureau Life would benefit from any judgment entered against him. Champerty was the common-law offense of assisting another to maintain a suit in exchange for a share of the proceeds. This argument fails because the defense of champerty does not exist in Michigan except as specified by statute with regard to attorneys. *Grant v Stecker & Huff, Inc,* 300 Mich 174, 177; 1 NW2d 500 (1942); *Wildey v Crane,* 63 Mich 720; 30 NW 327 (1886); see MCL 600.919; MSA 27A.919.

The agreement was not without its potential

---

[3] If Childs had established that Farm Bureau Life had no right to rescind the contract but had simply breached it, Childs would have had no liability because any negligence on his part would not have been the cause of plaintiff's injury.

hazards. Chief among them was that it effectively barred plaintiff from settling her dispute with Childs for less than $20,000. However, the agreement was reached the day before the trial began and the record gives no indication that Childs was interested in settling for any amount even if this agreement had not been reached.[4]

We see no reason to invalidate the agreement as being contrary to public policy. As long as the terms are not kept secret, such an agreement does not harm the integrity of the legal system and can further the goal of resolving disputes amicably. Childs is not entitled to a new trial because of plaintiff's settlement agreement with Farm Bureau Life.

Childs next argues that plaintiff's release of Farm Bureau Life from liability should act to release him as well. We disagree.

Under the common law, release of an agent acted to discharge a vicariously liable principal, and release of the principal discharged the agent. *Geib v Slater,* 320 Mich 316, 321; 31 NW2d 65 (1948). Plaintiff released Farm Bureau Life from *all* liability, not just liability premised on a breach of contract. Thus, under the common law, if plaintiff could have claimed against Farm Bureau Life under the doctrine of respondeat superior for the negligence of Childs, then plaintiff's release of that liability would have discharged Childs' liability as well.[5]

Our statutes provide that a release of one of two

[4] We are not faced with, and do not decide, how a trial court should respond to such an agreement when a defendant left out of the agreement does wish to settle. One possible response would be to give that defendant time to make an offer of judgment pursuant to MCR 2.405. This would let that defendant recover any expenses incurred as the result of facing a plaintiff who rejects a reasonable settlement offer.

[5] We cannot say whether Farm Bureau Life was vicariously liable for Childs' negligence because Childs did not raise this issue in the

or more persons liable in tort for the same injury does not discharge "any of the other tort-feasors from liability" unless the release says it does. MCL 600.2925d; MSA 27A.2925(4). In *Theophelis v Lansing General Hosp,* 430 Mich 473; 424 NW2d 478 (1988), our Supreme Court struggled with the effect the enactment of the statute had on the common-law rule. The Court found that, because a vicariously liable principal is not a tortfeasor, *id.* at 483, as that term is used in the statute, the statute did not abrogate the common-law rule that release of an agent discharged the principal. *Id.* at 491, 493; see also *Felsner v McDonald Rent-A-Car, Inc,* 193 Mich App 565; 484 NW2d 408 (1992). The Court concluded that "[a]ny other result would be illogical and unjust because release of the agent removes the only basis for imputing liability to the principal." *Theophelis, supra* at 491. However, it is equally true that the liability of the agent is not dependent upon the agent's relationship to the principal but is attributable to his own misconduct.

We conclude that enactment of the statute did abrogate the common-law rule that release of the principal discharged the liability of the agent. By the plain wording of the statute, if the principal obtains a release, that release does not discharge any other tortfeasor, including its agent, from liability unless the release says it does. MCL 600.2925d(a); MSA 27A.2925(4)(a). Because the release in this case did not say that it discharged Childs' liability, it did not discharge the agent

trial court. Everyone admitted that Childs was an agent of Farm Bureau Marketing. The record gives no indication of the relationship between Farm Bureau Marketing and Farm Bureau Life. Had Childs, upon learning of the settlement agreement, moved for summary disposition pursuant to MCR 2.116(C)(7), a record could have been established regarding Farm Bureau Life's liability under the doctrine of respondeat superior.

from liability. Therefore, even if Farm Bureau Life was vicariously liable for Childs' negligence, the release of Farm Bureau Life had no effect on Childs' liability.

Finally, Childs argues that the settlement agreement violated his statutory right to either a setoff or contribution. He argues that the trial court should not have approved the settlement without taking this into account. We disagree.

Our statutes provide for a right to contribution, based on relative fault, MCL 600.2925b; MSA 27A.2925(2), when two or more persons become jointly or severally liable in tort for the same injury to a person. MCL 600.2925a; MSA 27A.2925(1). A person liable in tort who reaches a settlement releasing the person's liability may be free from contribution claims made by other tort-feasors. MCL 600.2925d(c); MSA 27A.2925(4)(c). In exchange, the claim against those tortfeasors is reduced, or set off, by the greater of the "amount stipulated by the release . . . or . . . the amount of the consideration paid for it." MCL 600.2925d(b); MSA 27A.2925(4)(b).

Childs' complaint is that the statute anticipates that a nonsettling tortfeasor will have the benefit of either a setoff or contribution, and, because of the terms of the agreement, he has been denied the benefit of either. We agree that the settlement agreement prevented him from obtaining the benefit of a setoff; it stipulated no amount of liability it was discharging, and the consideration paid for it turned out to be nothing. The result was the judgment against him was in no way reduced because of the settlement.

However, we cannot conclude that the agreement unfairly prejudiced any claim of contribution Childs might have against Farm Bureau Life. For Farm Bureau Life's liability for contribution to

have been discharged, the release from liability must have been given in good faith. MCL 600.2925d; MSA 27A.2925(4). We are not deciding whether Childs has a surviving right to contribution from Farm Bureau Life; that is for another forum to decide. See MCL 600.2925c; MSA 27A.2925(3). We are only saying that concern regarding Childs' right to contribution should not have caused the trial court to reject the settlement agreement. The statute's "good faith" test sufficiently protects any right to contribution from Farm Bureau Life Childs may have.

Affirmed.