*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAFA DABISH,

Plaintiff-Appellant,

v

ZAK ESSAK and PANORAMA PROPERTY'S
LLC, doing business as VENETIAN GRAND
BANQUET HALL,

Defendants-Appellees.

UNPUBLISHED
September 25, 2024
11:13 AM

No. 367893
Macomb Circuit Court
LC No. 2021-001738-NZ

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Plaintiff Safa Dabish appeals as of right the trial court's order requiring that he and defendants, Zak Essak and Panorama Property's LLC, doing business as Venetian Grand Banquet Hall, execute a settlement agreement with release, mortgage, and pocket consent judgment, and dismissing his claims. Plaintiff argues that the trial court erred by requiring the parties to include a release in their written settlement because that agreement was meant to memorialize the terms of the settlement agreement made in open court, which contained no such release. We agree, and reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

As the issues raised on appeal are limited to the terms and execution of the parties' settlement agreement, we will keep the background facts regarding the parties' dispute brief. Plaintiff filed suit against defendants for breach of contract, unjust enrichment, fraudulent inducement, and common law and statutory conversion, alleging that he loaned Essak, as the owner and operator of Panorama, $372,000 for renovations to the property housing the Venetian, but never received repayment.

Following dueling motions for summary disposition, Judge Richard L. Caretti dismissed plaintiff's unjust enrichment and common-law conversion claims. For the remaining claims, at a

hearing on May 12, 2023, the parties put the terms of a settlement agreement on the record before visiting Judge Antonio Viviano[1] as follows:

> *Court*.  Did you want to put the settlement on the record and swear the clients.

> *Plaintiff's Counsel*.  Sure.  Your Honor, the terms of the settlement are as follows:

> The Defendant is going to pay the Plaintiff 250 thousand dollars in accordance with this payment schedule.  The first payment being 90 days out from today, which is approximately August one.

> I'm sorry, can we agree it be August 1, 2023.

> *Defense Counsel*.  The settlement agreement.

> *Plaintiff's Counsel*.  Well, I mean, let's put a date certain on it, if it's okay.

> *Defense Counsel*.  September 1st.

> *Plaintiff's Counsel*.  September 1st.  The first payment Your Honor of $50,000 is going to be made on or before September 1, 2023.  And I'll provide counsel with wiring instructions, or if he is going to send a cashier check to my office, either way that is fine.

> The remaining four payments will be made again in $50,000 increments.  The next one being on or before June 1, 2024.  June 1, 2025.  June 1, 2026 and the final payment on or before June 1, 2027.

> Of course, there is no prepayment penalty if they wish to make those sooner.

> In the event there is a default on the payments and a payment is not made when it is due, then in that case notice will be required to be given to Rachel Badalementi, Michael Petrus and Bob Kirk via e-mail only.

> And if the payment is uncured within 14 days of notice, then a pocket judgment for 372 thousand dollars will be entered by the Plaintiff pursuant to the settlement agreement merely by presentment to the Court with an affidavit verifying nonpayment and verifying that the notice and opportunity to cure have not been met.

> Is that correct so far, counsel.

---

[1] Relevant to the appeal, Judge Antonio Viviano only presided over the hearing in which the settlement was placed on the record.  All other relevant matters were handled by Judge Caretti.

*Defense Counsel*.  The pocket consent judgment will be in the amount of.

*Plaintiff's Counsel*.  372 thousand dollars, include a provision calling for interest payments of 12 percent per annum, plus attorney fees and costs for the necessity of collection of same.

There will also be a provision that says a credit is given for any payments previously made.

The pocket judgment is going to be on all counts, remaining counts in the complaint.

Of course, it won't be entered if the payments are made.  It's only in the event of default.

And further security for the settlement agreement and the payments called for by the settlement, Your Honor, is that the Defendant Zak Essak is granting the Plaintiff a mortgage on the real property located at, located in Sterling Heights at 42300 Van Dyke Avenue.  Property tax ID is 1010152015000 and currently the property is owned by an entity called Van Sterling Properties LLC; is that correct.

*Defense Counsel*.  Yes.

*Plaintiff's Counsel*.  Okay.  And Mr. Zak Essak is representing there are no other liens or mortgages on the property.  That this mortgage will be the first secured lien position on the property and that he has authority to enter into the mortgage on behalf of Van Sterling Properties LLC by virtue of being one of its members.

Is that also correct.

*Defense Counsel*.  On both points, yes.

*Plaintiff's Counsel*.  Okay.  And again the security for the payment plan is both the mortgage and the consent judgment, if applicable.

*Defense Counsel*.  So, and the only—

So all accurate.  The mortgage is against the real property.  The consent judgment is only against the named defendant, however, in the amount of the 372.  The mortgage cap, the total amount of the mortgage is the 250.  There is no interest on the mortgage, but there is interest on the pocket consent judgment that the Plaintiff will hold.

*Plaintiff's Counsel*.  And the mortgage that I will present to counsel for execution such that I will be allowed to file it on the title to the property is going to be a standard form mortgage.  It's going to reference that the parties, that this is security for a settlement agreement related to this case and that upon default then

we're entitled to all the recourse of foreclosure and everything else that an ordinary mortgage, would ordinarily have by advertising obviously. Do you, are you okay with that?

> *Defense Counsel*. That is right. In the event that there is a dispute, Judge, over the terms of the pocket consent judgment, the terms of the mortgage, we would ask that we be able to come back to you to --

> *Plaintiff's Counsel*. Be the final arbiter.

> *Defense Counsel*. The final arbiter. If for some reason you were not available, we would use Judge Caretti.

> *Plaintiff's Counsel*. Judge Caretti is fine.

> *Defense Counsel*. To do that.

> *Plaintiff's Counsel*. And what that means, we can't agree on a term that I just say is reasonable in any mortgage, he says it is not, we'll let the Court make the decision and we are both bound by it.

> *Defense Counsel*. Hopefully that doesn't happen, but just in case.

> *Plaintiff's Counsel*. All right. I believe that is all the terms. I'm happy to voir dire my client just to confirm.

> *Court*. Just one minute. Counsel for the defense, is that an accurate statement on the agreement of the parties.

> *Defense Counsel*. Yes, Judge.

During voir dire, both plaintiff and Essak confirmed their agreement with the settlement terms as placed on the record, and defense counsel agreed the terms reflected an accurate statement of the parties' agreement, neither objecting nor requesting to add terms. Counsel for the parties also agreed to draft a written settlement agreement memorializing the terms, as well as a pocket consent judgment and mortgage, with any dispute over the documents' terms to be decided by the court as final arbiter.

Following a status conference, the court held a hearing on July 3, 2023, because the parties could not agree on whether the written settlement agreement should contain a mutual release term. Plaintiff's counsel asserted the written agreement should memorialize the terms stated on the record, which did not include a release, while defense counsel stated she assumed, in error, that the settlement agreement would of course contain mutual releases. The court agreed that neither the parties' e-mail exchanges nor their statements at the May 12 hearing referenced a release, but ruled "that the settlement agreement will contain release language that releases the Defendant with respect to any and all issues presented in the subject space and also would preclude any of the Plaintiffs or their related companies that may not be parties to this litigation with respect to the indebtedness in this case." The court reasoned:

[W]ith respect to [plaintiff counsel's] position that the settlement agreement should release nothing, the Court finds that position unattainable and notes for the record under [plaintiff counsel's] argument the settlement agreement could be executed and then he on behalf of his clients or related company could file a lawsuit the next day with respect to his indebtedness.

In response to plaintiff's argument that the release should not apply to nonparties, the court held firm, stating, "This particular release language applies only to the subject matter of this case," so "if any of the parties or related nonparties, companies have a separate issue against defendants, that is not related to this particular indebtedness, that would be something they could bring."

Resolution stalled again following the hearing, prompting the court to enter a notice of intent to dismiss for lack of progress on July 21, 2023. On July 31, 2023, plaintiff filed a motion to enforce the settlement agreement, repeating his arguments and citing MCR 2.507(G) in support of his assertion that the settlement agreement as placed on the record was complete and binding. In their own motion to escrow settlement proceeds, defendants noted that the parties always intended to draft a written settlement agreement, pocket consent judgment, and mortgage after putting the settlement on the record, and asserted that plaintiff had yet to sign the revised settlement agreement reflecting the court's ruling.

As the parties had not yet drafted the written documents, defendants argued in response to plaintiff's motion to enforce that the record settlement was not complete because it did not contain all essential terms. And, in response to defendants' motion to escrow, plaintiff asserted he had not yet signed the revised settlement agreement because the court failed to enter a written order following its July 3, 2023 ruling on the record. Further, plaintiff argued that contrary to defendants' assertions, defendants could defend against any attempt at re-suit by filing a motion for summary disposition under MCR 2.116(C)(7).

The court held a hearing on August 21, 2023, affirming its prior ruling, and subsequently entered an order dismissing plaintiff's claims and requiring the parties to execute:

A. Settlement Agreement and Release containing language that "releases the Defendant[s] with respect to any and all issues presented in the subject [c]ase and also would preclude [Plaintiff] or [his] related companies that may not be parties to this litigation from bringing a lawsuit with respect to the indebtedness in this case" consistent with the Court's ruling on July 3, 2023, at **Exhibit A**;

B. The Mortgage at **Exhibit B**; and

C. The Pocket Consent Judgment at **Exhibit C**.

This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

We review a trial court's decision on a motion to enforce a settlement agreement for an abuse of discretion. See *Groulx v Carlson*, 176 Mich App 484, 493; 440 NW2d 644 (1989). An abuse of discretion occurs when the court selects an outcome that falls outside the range of principled outcomes, or premises its decision on a misunderstanding of controlling law. *Davis v Detroit Fin Review Team*, 296 Mich App 568, 612-613; 821 NW2d 896 (2012).

> The existence and interpretation of a contract are questions of law reviewed de novo. *Bandit Indus, Inc v Hobbs Int'l, Inc (After Remand)*, 463 Mich 504, 511; 620 NW2d 531 (2001). "An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). [*Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).]

"[F]actual questions regarding the validity of the contract's formation are reviewed for clear error." *Hodge v Parks*, 303 Mich App 552, 558; 844 NW2d 189 (2014) (quotation marks and citation omitted). Finally, "[t]he construction and application of a court rule are questions of law that this Court reviews de novo on appeal." *Kloian*, 273 Mich App at 456.

## B. JURISDICTION

First, we must address defendants' challenge to this Court's jurisdiction. Defendants argue:

> [J]urisdiction is improper here where the parties, by their words and actions as set forth more detailed herein, conferred jurisdiction on the issues of disputed terms to be included in the settlement documents to the Honorable Richard L. Caretti for resolution as the final arbiter. As such, jurisdiction is contested to the extent that Appellant appeals the decision by the Trial Court on the disputed mutual release term.

This argument fails. Defendants do not challenge the finality of the September 8, 2023 order appealed from, nor would they be successful in doing so, as it disposed of all of plaintiff's claims. See MCR 7.202(6)(a)(*i*) (a final order in a civil case means "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties . . ."). Rather, defendants challenge the scope of plaintiff's appeal, essentially asserting that plaintiff waived his appellate challenge to the inclusion of a release in the written settlement by agreeing to have the court serve as final arbiter of disputed terms—a central argument in the body of their appellate brief. But there is no lower court rule that prohibits a party from challenging, in a proper appeal, a prior interlocutory order where the court resolved the extent of an agreement reached in open court. And, as will be discussed in greater detail below, defendants' waiver argument lacks merit. We can discern no other true challenge to this Court's jurisdiction over plaintiff's appeal.

## C. TERMS OF THE SETTLEMENT AGREEMENT

Plaintiff argues that the trial court erred by ordering the parties to include a release in their written settlement agreement when the settlement placed on the record contained no such terms.

When a "case involves an agreement to settle" pending litigation, "it must comply" with MCR 2.507(G) "to be enforceable." *Mich Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 483; 637 NW2d 232 (2001). Under MCR 2.507(G), "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." That rule applies to a "contract for the settlement of pending litigation," so the purported settlement in this matter is only enforceable if it "satisfies the requirements" of MCR 2.507(G). *Kloian*, 273 Mich App at 456. [*Dabish v Gayar*, 343 Mich App 285, 290; 997 NW2d 463 (2022).]

"A settlement agreement is binding when it is made in open court." *Mikonczyk v Detroit Newspapers, Inc*, 238 Mich App 347, 349; 605 NW2d 360 (1999).

As plaintiff asserts, neither party mentioned a release of any kind when placing the terms of the settlement agreement on the record in open court—a fact which defendants do not dispute and the court found in its ruling at the July 3 hearing. Both plaintiff and Essak expressed agreement with the terms as placed on the record. And counsel for both parties confirmed that the record contained all the settlement terms, and that those terms were an accurate statement of the parties' agreement. Thus, the settlement agreement placed on the record, which did not contain a release, was complete and binding under MCR 2.507(G).

## D. WAIVER

As mentioned above, defendants argue that plaintiff waived review of the release issue, because the parties agreed to submit disputed terms to the trial court as final arbiter, and the court did, in fact, rule on the terms. But defendants' assertion is a misrepresentation of what the parties agreed to. The record reflects that the parties agreed the court would serve as final arbiter should any dispute arise as to the terms of the *mortgage* or the *pocket consent judgment*, but did not specifically include the settlement agreement. And, in their appellate brief, defendants admit as much, stating, "As reflected in the Transcript . . ., the Honorable Judge Richard L. Caretti retained jurisdiction to serve as final arbiter of disputes regarding the terms of the pocket consent judgment and mortgage." Accordingly, defendants have not convinced the Court that plaintiff waived his argument regarding the trial court's addition of a release in the written settlement agreement.

## E. ESSENTIAL TERMS, CONSIDERATION, AND MUTUAL ASSENT

As part of their waiver argument, defendants state that at the May 12 hearing, "the parties reached terms for a full and complete resolution of the claims asserted in the case and the terms of that settlement were placed on the record," but then argue later that the settlement as placed on the record lacked "all essential terms," mutual assent, and consideration.

"Before a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Pakideh v Franklin Commercial Mtg Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995). Further, a contract requires mutual assent

or a meeting of the minds on all the essential terms. *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004). [*Kloian*, 273 Mich App at 452-453.]

There must also be consideration. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 508; 885 NW2d 861 (2016). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kloian*, 273 Mich App at 454 (quotation marks and citation omitted).

Defendants argue that not all essential terms of the settlement were placed on the record because the parties still intended to draft the settlement agreement, mortgage, and pocket consent judgment. However, they fail to cite any caselaw in support of their argument that a settlement agreement placed on the record in open court does not contain all essential terms where the parties intend to memorialize that agreement in writing. Again, "[a] settlement agreement is binding when it is made in open court." *Mikonczyk*, 238 Mich App at 349. Thus, a written settlement premised on the agreement made in open court should conform to that agreement.

Indeed, in *Mikonczyk*, 238 Mich App at 348-349, the parties placed the terms of their settlement on the record, advising the court that the written agreement would follow. However, the parties were subsequently unable to agree on the terms to include in the written agreement. *Id*. at 349. This Court rejected the defendants' argument that the agreement on the record was not effective without the written agreement, because the parties simply agreed to "reduce the settlement agreement to writing utilizing mutually agreeable language," and the drafter must "comply with the plain and simple terms of the agreement as set forth on the record." *Id*. at 349-351.

Here, defendants do not dispute that neither party mentioned inclusion of a release when the settlement agreement terms were placed on the record. They do, however, assert that an e-mail exchange from June 1, 2023, shows that the parties always intended to memorialize the settlement agreement in an actual settlement and release, stating:

On May 23, 2023, counsel for [defendants] emailed the draft "Settlement Agreement and Mutual Release" to counsel for [plaintiff]. On June 1, 2023, counsel for [plaintiff] responded with revisions to the Settlement Agreement and Mutual Release and attached the exhibits along with "Plaintiff revised – Settlement Agreement and Mutual Release" attached to the email.

While it is true that some of the e-mails referenced contain the subject title "Settlement Agreement and Mutual Release," we fail to see how any of them demonstrate that the parties always intended to include a release in the written settlement agreement. Rather, counsel for defendants simply included a release in their draft of the settlement agreement attached in an e-mail to plaintiff's counsel, which plaintiff then extensively argued against.

The same is true for e-mails exchanged between the parties on May 4 and 5, 2023, before the settlement agreement terms were placed on the record. Defense counsel offered plaintiff's counsel a full release of all claims in exchange for a sum of money, and plaintiff's counsel rejected

the offer, but seemingly on payment rather than release grounds specifically.[2] From this e-mail exchange, we cannot conclude that both parties intended the settlement to encompass a release of claims. The e-mails do not demonstrate that plaintiff's counsel assented to a release term, such that we believe it could be assumed incorporated into the terms placed on the record in open court. And, although it is unclear which specific e-mails the trial court received prior to the July 3 hearing, the court acknowledged, "There are no specific references either in the e-mail exchange or the transcript to mutual releases."

Nor do we see how defendants' appellate exhibits 15-25 "clearly evidence the fact that the parties agreed there would be a Settlement and Release Agreement (to be drafted by [defendants]), and the Mortgage and PCJ (to be drafted by [plaintiff])," as defendants assert. "In the absence of evidence that the issue was contemplated and agreed on at the time the settlement agreement was made, we find no basis for permitting defendants to unilaterally incorporate a provision . . . ." *Id*. at 350-351.

Defendants' consideration argument also fails. "To have consideration there must be a bargained-for exchange; [t]here must be a benefit on one side, or a detriment suffered, or service done on the other." *Innovation Ventures*, 499 Mich at 508 (quotation marks and citation omitted; alteration in original). Defendants assert, without citing any supporting caselaw, that without a release, the parties' settlement agreement lacks consideration. However, in *Mikonczyk*, the defendants argued that the trial court erred by not including a broad release of future claims in a written settlement agreement meant to memorialize the settlement placed on the record. *Mikonczyk*, 238 Mich App at 350. This Court disagreed, concluding that the agreement was valid in the absence of a release:

> A review of the settlement agreement placed on the record in open court establishes that [the] defendants agreed to pay [the] plaintiff a specified sum of money in exchange for dismissal of the pending lawsuit. While we do not dismiss the possibility that [the] defendants indeed contemplated incorporating additional terms and conditions into the agreement, the time to do so was in court when the agreement was placed on the record, not days or weeks thereafter. [*Id*.]

---

[2] We note, also, that it is unclear whether these e-mails were included in the lower court record, as we could not locate them, or whether defendants' attachment of the e-mails to their brief on appeal constitutes an unauthorized expansion of the record. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("[A] party may not expand the record on appeal.").

Here, the parties agreed when placing the settlement on the record to dismissal of the lawsuit.[3] At a minimum, this was legal consideration for the formation of the settlement agreement.[4]

## F. MISTAKE

Finally, defendants argue that the trial court did not err by requiring the parties to include a release in their written settlement agreement because of mistake and lack of mutual assent, stating:

> Here, while the precise phrase "release" may not have been explicitly articulated on the record on the day of the Bench Trial, it is abundantly clear that such a release was an integral and implicit component of the negotiated settlement. Throughout the course of negotiations, both parties operated under the understanding that the resolution of this dispute would entail a comprehensive release of claims. It is inconceivable that either party would have engaged in negotiations without the understanding that any settlement agreement reached would include a release of claims.

> \* \* \*

> Moreover, the terms of the settlement as presented on the record undoubtedly reflect the parties' shared intent to effectuate a full and final resolution of their respective claims upon final agreement to all terms in the Settlement Agreement, Mortgage and PCJ that had not yet been drafted.

"As a general rule, settlement agreements are 'final and cannot be modified.' " *Clark v Al-Amin*, 309 Mich App 387, 395; 872 NW2d 730 (2015) (citation omitted). "This is because settlements are favored by the law, and therefore will not be set aside, except for fraud, mutual mistake, or duress." *Id*.

> "A mutual mistake is 'an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction.' " *Kaftan v Kaftan,* 300 Mich App 661, 665–666; 834 NW2d 657 (2013), quoting *Ford Motor Co v City of Woodhaven,* 475 Mich 425, 442; 716 NW2d 247 (2006). A "mutual mistake" is not a mere error or misunderstanding—it is an *extreme* mistake that must be "so material that . . . it goes to the foundation of the agreement." *Simkin v Blank,* 19 NY3d 46, 52; 945 NYS2d 222; 968 NE2d 459 (2012) (citation and quotation marks omitted). And, needless to say, a mutual mistake must be *mutual*—it is not enough for one party to claim mistake,

---

[3] When the court asked if the parties were going to enter a dismissal of the case, defense counsel said yes, and the parties agreed to take some time to draft the paperwork agreed upon following placement of the settlement on the record.

[4] Of course, also constituting valid consideration was plaintiff agreeing that defendant could pay back only $250,000 of the disputed $372,000 loan amount.

when the other party was aware of the alleged "mistake" at issue. See *Kaftan,* 300 Mich App at 665–666. [*Clark*, 309 Mich App at 395-396.]

Again, "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kloian*, 273 Mich App at 454 (quotation marks and citation omitted). As described above, defendants have provided insufficient evidence or caselaw in support of their argument that the parties' agreement on the record, without a release, lacked *mutual* assent, or that *both* parties always intended to include such a release in the settlement agreement. Without pointing to any additional evidence, defendants simply conclusorily state that "[t]hroughout the course of negotiations, both parties operated under the understanding that the resolution of this dispute would entail a comprehensive release of claims."

We also find no merit in defendants' assertion that this Court declared void a settlement agreement which did not act as a release in *Smith v Childs*, 198 Mich App 94; 497 NW2d 538 (1993). There, the defendant asserted that the parties' settlement agreement should be declared void because it was a so-called *Mary Carter*[5] agreement, which is an agreement that does "(1) not act as a release, so the agreeing defendant remains in the case, (2) is structured in a way that it caps the agreeing defendant's potential liability and gives that defendant an incentive to assist the plaintiff's case against the other defendants, and (3) is kept secret from the other parties and the trier of fact . . . ." *Smith*, 198 Mich App at 97-98. This Court disagreed, finding that the agreement was not kept secret and contained a release. *Id*. at 98. Thus, *Smith* was not a case where a settlement agreement was declared void as contrary to public policy where it did not act as a release, as defendants clumsily assert.

### III. CONCLUSION

Here, neither party mentioned a release of any kind when placing the terms of the settlement agreement on the record in open court, both plaintiff and Essak expressed agreement with the terms as placed on the record, which were unambiguous and sufficient to form a contract, and counsel for both parties confirmed that the record contained all the settlement terms and those terms were an accurate statement of the parties' agreement. Though we recognize that the vast majority of final settlements contain some form of a release, we are confined to enforcing what the parties actually agreed to in open court. Accordingly, the trial court erred when it required that the parties include, in their written settlement agreement, a release.[6]

---

[5] *Booth v Mary Carter Paint Co*, 202 So 2d 8 (Fla App, 1967).

[6] Because we have concluded the trial court erred in requiring the parties to include a release in their written settlement agreement, we need not address plaintiff's argument that the court erred in including nonparties as part of the release.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado